UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OGUZHAN YILMAZ,<br>Defendant. | Docket No.: 2:26-cr-00063-mkl |

# PLEA AGREEMENT

The United States of America, by and through the United States Attorney's Office for the District of Vermont (hereafter "the United States"), and the defendant, OGUZHAN YILMAZ, agree to the following in regard to the disposition of pending criminal charges.

1. OGUZHAN YILMAZ agrees to pled guilty to Count 1 of the Indictment, charging him with attempted transport of aliens, for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

2. OGUZHAN YILMAZ understands, agrees and has had explained to him by counsel that the Court may impose the following sentence on his plea: up to 10 years of imprisonment, pursuant to 8 U.S.C. § 1324(a)(1)(B)(i); up to 3 years of supervised release, pursuant to 18 U.S.C. § 3583(b)(2); up to a $250,000 fine, pursuant to 18 U.S.C. § 3571; a $100 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A); and an additional $5,000 special assessment pursuant to 18 U.S.C. § 3014.

3. OGUZHAN YILMAZ agrees to plead guilty because he is, in fact, guilty of the above crime.

4. OGUZHAN YILMAZ stipulates to, agrees with, and admits the following facts:

a. At approximately 4:00 pm on June 20, 2026, United States Border Patrol was alerted that a Border Patrol detection system had detected multiple individuals crossing the Canada – United States boundary in the area of Rheaume Road and the Duty Free Americas store, in Highgate, Vermont, an area known for human smuggling/human smuggling attempts.

b. Border Patrol Agents ("BPAs") began canvassing the area to locate the individuals.

c. Approximately three hours later, BPAs discovered six individuals, two of them adults, hiding in the woods near Rheaume Road. The individuals were wet and muddy and carrying wet, muddy duffel bags. One of the adult individuals, S.L.P.T., was ultimately confirmed to be a citizen of Colombia. The other adult individual, O.M.N., was confirmed to be a citizen of the Congo. Neither S.L.P.T. nor O.M.N. had proper documentation to be in the United States legally, and both admitted they had crossed the Border illegally.

d. While BPAs were on scene speaking with the six subjects, a gray Toyota Prius approached the area slowly. BPAs stopped the Prius. The driver and sole occupant was OGUZHAN YILMAZ.

e. When questioned, OGUZHAN YILMAZ claimed to be in the area to visit his girlfriend in Burlington, some 43 miles South. OGUZHAN YILMAZ also claimed to be in the area to go to the Duty Free Americas store. BPAs had encountered OGUZHAN YILMAZ driving the Prius near the Duty Free Americas store approximately 2.5 hours earlier.

a. At approximately 4:00 pm on June 20, 2026, United States Border Patrol was alerted that a Border Patrol detection system had detected multiple individuals crossing the Canada – United States boundary in the area of Rheaume Road and the Duty Free Americas store, in Highgate, Vermont, an area known for human smuggling/human smuggling attempts.

b. Border Patrol Agents ("BPAs") began canvassing the area to locate the individuals.

c. Approximately three hours later, BPAs discovered six individuals, two of them adults, hiding in the woods near Rheaume Road. The individuals were wet and muddy and carrying wet, muddy duffel bags. One of the adult individuals, S.L.P.T., was ultimately confirmed to be a citizen of Colombia. The other adult individual, O.M.N., was confirmed to be a citizen of the Congo. Neither S.L.P.T. nor O.M.N. had proper documentation to be in the United States legally, and both admitted they had crossed the Border illegally.

d. While BPAs were on scene speaking with the six subjects, a gray Toyota Prius approached the area slowly. BPAs stopped the Prius. The driver and sole occupant was OGUZHAN YILMAZ.

e. When questioned, OGUZHAN YILMAZ claimed to be in the area to visit his girlfriend in Burlington, some 43 miles South. OGUZHAN YILMAZ also claimed to be in the area to go to the Duty Free Americas store. BPAs had encountered OGUZHAN YILMAZ driving the Prius near the Duty Free Americas store approximately 2.5 hours earlier.

f. S.L.P.T. explained, and data on S.L.P.T.'s phone confirmed, that she had worked with another individual, "Terr," to illegally enter the United States. Terr provided S.L.P.T. OGUZHAN YILMAZ's name and phone number for S.L.P.T. to send payment for the illegal entry. S.L.P.T. arranged to have friends/family members send OGUZHAN YILMAZ two separate Zelle payments totaling $1,500. S.L.P.T. confirmed these payments by sending screenshots to Terr.

5. OGUZHAN YILMAZ understands that it is a condition of this agreement that he refrain from committing any further crimes, whether federal, state or local, and that if on release he will abide by all conditions of release.

6. OGUZHAN YILMAZ acknowledges that he understands the nature of the charge to which he will plead guilty and the possible penalties. He also acknowledges that he has the following rights: the right to persist in a plea of not guilty; the right to a jury trial; the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses; the right to be protected from compelled self-incrimination; and the right to testify and present evidence and to compel the attendance of witnesses. He understands that by pleading guilty, he will waive these rights. He also understands that if his guilty plea is accepted by the Court, there will be no trial and the question of guilt will be resolved; all that will remain will be the Court's imposition of sentence.

7. OGUZHAN YILMAZ fully understands that he may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation of the parties to this agreement, other than an agreement between the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States specifically reserves the right to allocute at sentencing.

There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the government may take at sentencing. Both parties are free to move for a variance or other reduction from the guideline range and to argue for a sentence outside the advisory sentencing range, except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

8. OGUZHAN YILMAZ fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. OGUZHAN YILMAZ acknowledges that there is no agreement between the parties as to both the calculation of the offense level and the defendant's criminal history category. OGUZHAN YILMAZ understands his criminal history could impact both the offense level and the criminal history category applicable to his Guideline calculation. He fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. He acknowledges that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief.

9. OGUZHAN YILMAZ agrees to make a good-faith effort to pay any fine or restitution he is ordered to pay. OGUZHAN YILMAZ agrees to pay the special assessment at the time of sentencing.

There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the government may take at sentencing. Both parties are free to move for a variance or other reduction from the guideline range and to argue for a sentence outside the advisory sentencing range, except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

8. OGUZHAN YILMAZ fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. OGUZHAN YILMAZ acknowledges that there is no agreement between the parties as to both the calculation of the offense level and the defendant's criminal history category. OGUZHAN YILMAZ understands his criminal history could impact both the offense level and the criminal history category applicable to his Guideline calculation. He fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. He acknowledges that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief.

9. OGUZHAN YILMAZ agrees to make a good-faith effort to pay any fine or restitution he is ordered to pay. OGUZHAN YILMAZ agrees to pay the special assessment at the time of sentencing.

10. OGUZHAN YILMAZ recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. The defendant, if not a United States citizen, may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Removal and other immigration consequences are the subject of a separate proceeding, however, and he understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. OGUZHAN YILMAZ nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

11. The United States agrees that in the event that OGUZHAN YILMAZ fully and completely abides by all conditions of this agreement, the United States will:

a. recommend to the sentencing Court that he be sentenced to a term of imprisonment at the low end of the Sentencing Guidelines range if the total offense level is 11 or above;

b. recommend that he receive a two-point credit for acceptance of responsibility under Guideline § 3E1.1(a), provided that (1) he cooperates truthfully and completely with the Probation Office during the presentence investigation, including truthfully admitting the conduct comprising the offense(s) of conviction and not falsely denying any relevant conduct for which he is accountable under U.S.S.G. § 1B1.3, (2) he abides by the conditions of his release, and (3) provided that no new information comes to the attention of the United States relative to the issue of his receiving credit for acceptance of responsibility; and

c. move for an additional one-point credit for timely acceptance of responsibility, if the offense level (before acceptance) is 16 or greater and he meets the conditions in the subparagraph above.

12. If the United States determines, in its sole discretion, that OGUZHAN YILMAZ has committed any offense after the date of this agreement, has violated any condition of release, or has provided any intentionally false information to Probation, the obligations of the United States in this agreement will be void. The United States will have the right to recommend that the Court impose any sentence authorized by law and will have the right to prosecute him for any other offenses he may have committed in the District of Vermont. OGUZHAN YILMAZ understands and agrees that, under such circumstances, he will have no right to withdraw his previously entered plea of guilty.

13. It is understood and agreed by the parties that should OGUZHAN YILMAZ's plea not be accepted by the Court for whatever reason, or later be withdrawn or vacated, this agreement may be voided at the option of the United States and he may be prosecuted for any and all offenses otherwise permissible. OGUZHAN YILMAZ also agrees that the statute of limitations for all uncharged criminal offenses known to the United States as of the date it signs this plea agreement will be tolled for the entire period of time that elapses between the signing of this agreement and the completion of the period for timely filing a petition under 28 U.S.C. § 2255, or if such petition is filed, the date of any decision by a court to vacate the plea or the conviction.

14. It is further understood that this agreement is limited to the Office of the United States Attorney for the District of Vermont and cannot bind other federal, state or local prosecuting authorities.

15. OGUZHAN YILMAZ expressly states that he makes this agreement of his own free will, with full knowledge and understanding of the agreement and with the advice and assistance of his counsel, Sara M. Puls, Esq. OGUZHAN YILMAZ further states that his plea of guilty is not the result of any threats or of any promises beyond the provisions of this agreement. Furthermore, OGUZHAN YILMAZ expressly states that he is fully satisfied with the representation provided by his attorney, Sara M. Puls, Esq., and has had full opportunity to consult with his attorney concerning this agreement, concerning the applicability and impact of the Sentencing Guidelines (including, but not limited to, the relevant conduct provisions of Guideline Section 1B1.3), and concerning the potential terms and conditions of supervised release.

16. No agreements have been made by the parties or their counsel other than those contained herein or in any written agreement supplementing this agreement.

[SIGNATURE BLOCKS ON FOLLOWING PAGE]

UNITED STATES OF AMERICA

JONATHAN A. OPHARDT
First Assistant United States Attorney

9/15/26
Date

By: Katherine H. Flynn
Assistant U.S. Attorney

09.10.26
Date

OGUZHAN YILMAZ
Defendant

I have read, fully reviewed and explained this agreement to my client, OGUZHAN YILMAZ. I believe that he understands the agreement and is entering into the agreement voluntarily and knowingly.

9/15/26
Date

Sara M. Puls, Esq.
Counsel for the Defendant